IN THE COURT OF APPEALS
AT KNOXVILLE

FILED

**August 6, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

PHILLIP W. TWITTY and ALICE  )     KNOX CHANCERY
F. TWITTY,                    )     C.A. NO. 03A01-9801-CH-00031
                             )
     Plaintiffs-Appellants    )
                             )
                             )
vs.                          )
                             )     HON. FREDERICK D. McDONALD
                             )     CHANCELLOR
                             )
KENTON YOUNG and ROY EDWARD   )
BROWN, and VOLUNTEER REALTY   )
COMPANY OF KNOXVILLE, INC.,   )
                             )
     Defendants-Appellees     )     AFFIRMED AND REMANDED


DONALD E. OVERTON and GLENNA W. OVERTON, Overton & Overton, Knoxville, for Appellants.


BILL W. PETTY, O'Connor, Petty, Child & Boswell, Knoxville, for Appellee Volunteer Realty Company.


GEORGE H. BUXTON, III, Buxton Law Office, Oak Ridge, for Appellees Young and Brown.


O P I N I O N

McMurray, J.


On October 26, 1993, plaintiffs purchased a new residence in Oak Ridge from the defendants. Thereafter, the unfinished basement of the residence flooded on several occasions after heavy rainfall.

On April 5, 1996, plaintiffs sold the residence at substantially less than what they had paid for it. The plaintiffs then sued the defendants alleging fraudulent misrepresentation, breach of implied warranty, and violation of the Tennessee Consumer Protection Act, in that defendants did not inform them prior to closing that the basement was subject to flooding during heavy rains. The trial court, found that the plaintiffs had presented no evidence tending to show defendants had knowledge of the basement's propensity to flood and dismissed the plaintiffs' action. We affirm the judgment of the trial court.

The residence in question was built by defendants, Kenton Young and Roy Edward Brown. The plaintiffs had lived in the neighborhood where the house was being built for approximately fifteen years. Plaintiffs first learned that the residence was being built, and observed the construction, when the concrete basement floor was in place, the shapes of all the rooms were evident, and some drywall had been hung. Plaintiffs testified that they were interested and thereafter went by the residence a couple of times per week to observe the construction.

Plaintiffs contracted to purchase the residence on June 10, 1993 and the closing took place on October 6, 1993. The sales price was $202,750. The lot upon which the residence was built is 0.46 acre in size, and a stream runs across a portion of the lot

2

behind the house.  At the closing, plaintiffs were presented a copy of a survey styled "mortgage survey" which had been prepared by Dean A. Orr.  The survey states that "some of the property is in a flood zone" [underlining in original].  The survey shows a "floodway" area which runs approximately ten feet from the rear of the house.  The survey also states: "Note: Required minimum floor elevation of fin. floor is 825.0.  House has a floor elevation of 827.8±."  Plaintiffs were not required to obtain flood insurance by the mortgagee bank.

At closing, the basement of the residence was unfinished and had no heating or air conditioning.  Plaintiffs testified that the basement's clearance is as low as five and a half feet in some places, and is six and a half feet at its highest.[1]  At the time of closing, the basement contained two electrical outlets and a sump pump in one of the corners.  The plaintiffs testified that they asked defendant Young if they could finish the basement, and he told them they could not because that would be against the Oak Ridge building code and the city would not approve it.

Notwithstanding this advice, the plaintiffs contracted with a construction company to build a finished sewing room in the basement and to provide the room with heating and air conditioning.

---

[1]Photographs of the basement introduced into evidence show that the basement has no finished ceiling.

3

Plaintiff, Alice Twitty, testified that the contractor finished the room the day after the city codes inspector inspected the residence. Ms. Twitty testified that Young knew before closing of the plaintiffs' plans to add a finished room in the basement.

Plaintiffs testified that they never observed water entering or standing in the basement during any of their inspections prior to closing. No one informed the plaintiffs before closing that the basement was subject to flooding in the event of heavy rainfall.

Mr. Twitty testified that on December 11, 1993, he noticed water seeping in the basement and standing on the concrete floor in the approximate depth of two inches. He called Young, who lived across the street, and Young came over and observed the flooding. The basement flooded again on April 12, 1994. On June 24, 1994, very heavy rainfall occurred, and plaintiffs testified that the flood water in the basement rose to a depth of approximately 30 inches. On that occasion, the Oak Ridge Fire Department was called and aided the plaintiffs in pumping the water out of their basement. Plaintiffs had stored some personalty in the basement which was damaged or destroyed during the April and June floods.

Plaintiffs placed the property on the market in November of 1995. Plaintiffs filled out a Tennessee Residential Property Condition Disclosure form regarding the residence. On the

4

disclosure form, plaintiffs stated that the basement floor "may need to be waterproofed" and described the three flooding events. No further flooding had occurred between June 1994 and November 1995. Plaintiffs, in January of 1996, sold the residence to the first parties who made them an offer. The sales price was $169,750. Mr. Twitty stated that he sold the property for that amount because "it seemed like a fair price for it due to the condition it was in."

Plaintiffs filed a complaint against Young and Brown, the owners and developers of the property, and Volunteer Realty, the real estate agent, on June 25, 1996. Plaintiffs asserted that defendants were guilty of fraud in the inducement, breach of implied warranty, and violation of the Tennessee Consumer Protection Act. The essence of plaintiffs' complaint was defendants' nondisclosure of the basement's propensity to flood. The defendants in their answers denied any knowledge that the property had any flooding problem. A non-jury trial was held in Knox County Chancery Court on November 24, 1997.

After the plaintiffs concluded their proof in chief, defendants moved to dismiss the complaint pursuant to T.R.Civ.P. 41.02(2). The trial court, held that plaintiffs had not proved that the defendants had any knowledge of the basement's propensity

5

to flood, and granted the motion.  Plaintiffs appeal this ruling, and the issue before us is its correctness.

The standard of review regarding a dismissal under T.R.Civ.P. 41.02(2) is as noted by the court in <u>Atkins v. Kirkpatrick</u>, 823 S.W.2d 547, 552 (Tenn.App. 1991):

> If a motion to dismiss is made at the close of Plaintiffs' proof in a non-jury case, under T.R.C.P. Rule 41.02(2), the trial court must impartially weigh and evaluate the evidence just as though it were making findings of fact and conclusions of law after presentation of all the evidence.  If the plaintiff's case has not been established by a preponderance of the evidence, the case should be dismissed if, on the facts found in the applicable law, plaintiff has shown no right to relief. <u>City of Columbia v. C.F.W. Construction Co.</u>, 557 S.W.2d 734 (Tenn.1977).

> Our scope of review is pursuant to Rule 13(d) T.R.A.P.  The findings of the trial court in granting such a motion are accompanied by a presumption of correctness and, unless the preponderance of the evidence is otherwise, those findings must be affirmed. <u>College Grove Water Utility District v. Bellenfant</u>, 670 S.W.2d 229 (Tenn.App.1984).

<u>Id</u>.

We note at the outset that plaintiffs have presented no evidence tending to show any fraudulent or misleading statement made to them by any defendant.  Plaintiffs argue that they were presented at closing, and relied upon, the survey which represented that the house was located near but not in a floodway.  However, that survey was conducted neither by nor for the defendants, and

6

there is no evidence otherwise linking the surveyor with the defendants in any fashion. There is no indication in the record that plaintiffs ever asked the defendants about the possibility of flooding; it appears they simply relied upon the survey and the fact that they were not required to carry flood insurance on the residence.

Thus, the misrepresentation issue resolves into whether the defendants effectively misrepresented the condition of the residence by remaining silent. As a general rule, a party may be held liable for damages caused by his or her failure to disclose material facts to the same extent that a party may be liable for damages caused by fraudulent or negligent misrepresentation. Gray v. Boyle Investment Co., 803 S.W.2d 678, 683 (Tenn.App. 1990). Obviously, a party must have knowledge of a material fact before a duty arises to disclose it:

> For concealment or non-disclosure to constitute fraud, the party charged with fraud must have knowledge of an existing fact or condition and a duty to disclose the fact or condition. Dozier v. Hawthorne Development Co., 37 Tenn.App. 279, 292, 262 S.W.2d 705, 711 (1953).

Lonning v. Jim Walter Homes, Inc., 725 S.W.2d 682, 685 (Tenn.App. 1986).

Plaintiffs' first witness was Jeff Collins, whose wife's parents lived next door to the property. Collins testified that

7

during the spring of 1993, when the residence was being built, he saw the stream behind the residence escape its banks and flood into the footers. He saw workers pumping water out of the footers, which had then been dug but not poured. This was the only flooding incident Collins saw prior to the house being finished. Collins did not testify as to how long the footers remained flooded, and did not know how long it took the workers to pump the water out.

There was no other evidence presented regarding this flooding event. Plaintiffs presented no proof as to who the workers were or for whom they worked, whether for the defendants, a subcontractor, or someone else. No other evidence was presented tending to suggest that any defendant had knowledge of the possibility that the basement could flood during heavy rainfall. Based on our review of the record, we concur with the trial court's finding that the plaintiffs' evidence did not prove that the defendants had knowledge of the possibility of the unfinished basement flooding in the event of heavy rains, such that they would be guilty of fraud or misrepresentation.

Plaintiffs argue that defendants Young and Brown breached the implied warranty of workmanlike quality and against major structural defects first recognized by our Supreme Court in the case of Dixon v. Mountain City Const. Co., 632 S.W.2d 538, 541 (Tenn. 1982):

"[w]e hold that in every contract for the sale of a recently completed dwelling, and in every contract for the sale of a dwelling then under construction, the vendor, if he be in the business of building such dwellings, shall be held to impliedly warrant to the initial vendee that, at the time of the passing of the deed or the taking of possession by the initial vendee (whichever first occurs), the dwelling, together with all its fixtures, is sufficiently free from major structural defects, and is constructed in a workmanlike manner, so as to meet the standard of workmanlike quality then prevailing at the time and place of construction; and that this implied warranty in the contract of sale survives the passing of the deed or the taking of possession by the initial vendee."

Id., quoting Hartley v. Balleu, 286 N.C. 51, 209 S.E.2d 776, 783 (1974).

Plaintiffs argue in their brief that "constructing a house in a flood plain is not good workmanship." Assuming for the moment that defendants did in fact build the house in a "flood plain," this argument would carry more weight if plaintiffs had pled and proved that there were structural defects in the residence, or materials or workmanship of inferior quality. However, there has been no showing of structural damage to the house either due to the flooded basement or otherwise. There are photographs in the record showing some minor separation above the windows, between the window frames and the sills, and also showing slight settlement of concrete pads around the house. It is uncontroverted, however, that plaintiffs never requested that the defendants remedy these minor problems.

9

The Dixon court stated the rationale for adopting the implied warranty rule as follows:

> "In the setting of the marketplace, the builder or seller of new construction — not unlike the manufacturer or merchandiser of personalty — makes implied representations, ordinarily indispensable to the sale, that the builder has used reasonable skill and judgment in constructing the building. On the other hand, the purchaser does not usually possess the knowledge of the builder and is unable to fully examine a complete house and its components without disturbing the finished product. Further, unlike the purchaser of an older building, he has no opportunity to observe how the building has withstood the passage of time. Thus, he generally relies on those in a position to know the quality of the work to be sold, and his reliance is surely evident to the construction industry."

Dixon, 632 S.W.2d at 541, quoting Pollard v. Saxe and Yolles Dev. Co., 115 Cal.Rptr. 648, 651, 525 P.2d 88, 91 (1974).

Thus, the builder-developer's superior knowledge of the construction process is the primary reason for holding him or her liable for major structural defects and poor workmanship in the absence of an express warranty. In this case, as already noted, it has not been shown that defendants had any knowledge superior to that of the plaintiffs regarding flooding. The plaintiffs testified that, having lived in the neighborhood for some fifteen years, they often crossed above the stream which ran behind the residence during that time. Plaintiffs came by and observed the property several times a week from May 1993 to October 1993 and did not observe any flooding. Finally, plaintiffs knew before the

10

closing that the unfinished basement could not be legally converted into a habitable area because of the city code. Under the facts of this case, we hold that defendants did not breach the implied warranty against major structural defects and poor workmanship in their construction of the residence.

The Tennessee Consumer Protection Act, T.C.A. § 47-18-109(a)(1) provides,

> Any person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by this part, may bring an action individually to recover actual damages.

We concur with the trial court's finding that plaintiffs did not prove that defendants were guilty of any "unfair or deceptive" acts in this case, so as to trigger liability under the Consumer Protection Act.

The judgment of the trial court is affirmed in all respects. Costs on appeal are assessed to the appellants.

_____
Don T. McMurray, Judge

CONCUR:

_____
Houston M. Goddard, Presiding Judge

11

_____
Herschel P. Franks, Judge

```
             IN THE COURT OF APPEALS
                 AT KNOXVILLE
```

PHILLIP W. TWITTY and ALICE    )    KNOX CHANCERY
F. TWITTY,                     )    C.A. NO. 03A01-9801-CH-00031
                               )
      Plaintiffs-Appellants    )
                               )
                               )
vs.                            )
                               )    HON. FREDERICK D. McDONALD
                               )    CHANCELLOR
                               )
KENTON YOUNG and ROY EDWARD    )
BROWN, and VOLUNTEER REALTY    )
COMPANY OF KNOXVILLE, INC.,    )
                               )
      Defendants-Appellees     )    AFFIRMED AND REMANDED


                      __JUDGMENT__


      This appeal came on to be heard upon the record from the

Chancery Court of Knox County, briefs and argument of counsel.

Upon consideration thereof, this Court is of opinion that there was

no reversible error in the trial court.

      The judgment of the trial court is affirmed in all respects.

Costs on appeal are assessed to the appellants.


                              PER CURIAM